UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
EARL G. W.,                                              :

               Plaintiff,                    :        OPINION & ORDER

       -against-                              :        25 Civ. 7314 (GWG)

COMMISSIONER OF THE                             :
SOCIAL SECURITY ADMINISTRATION,
                                                        :
             Defendant.
----------------------------------------------------------------x
GABRIEL W. GORENSTEIN, United States Magistrate Judge:

Plaintiff Earl W. brings the instant action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a November 3, 2023 decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under the Social Security Act. See Complaint, filed, Sept. 3, 2025 (Docket # 1) ("Compl."). Plaintiff seeks reversal of the Commissioner's decision.[1] For the reasons that follow, this matter is remanded to the Commissioner.

I.        BACKGROUND

   A.  Procedural History

On March 25, 2017, plaintiff, a former package handler, applied for SSDI and SSI, claiming a disability as of October 11, 2016. See Social Security Administration ("SSA") Administrative Record, filed Dec. 16, 2025 (Docket # 9) ("R.") at 96-115. His claims were initially denied. See id. at 116-29.

---

[1] See Brief in Support of Request for Review of Social Security Decision, filed Jan. 10, 2026 (Docket # 11) ("Br."); Brief in Opposition, filed Feb. 13, 2026 (Docket # 13) ("Opp."); Reply Brief in Support, filed Mar. 3, 2026 (Docket # 14).

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 130. An ALJ heard plaintiff's claims on April 19, 2019, see id. at 40-80, and on September 4, 2019, he issued a decision finding that plaintiff was not disabled, see id. at 32-39. Plaintiff asked the SSA's Appeals Council to review this decision, see id. at 22-27, but the Appeals Council denied the request, see id. at 1-3. Plaintiff brought suit in the United States District Court for the Eastern District of New York to obtain judicial review of the ALJ's decision. See id. at 986-88.

On November 15, 2021, the court approved the parties' stipulation to remand the case to the SSA, see id. at 998-1000, and the Appeals Council in turn remanded plaintiff's claims to another ALJ for rehearing, see id. at 1001-05. The Appeals Council directed the ALJ to apply the so-called treating physician rule to the opinions of plaintiff's doctors, and to reevaluate the consistency of plaintiff's reported symptoms with his medical records, along with his ability to perform any work. Id. at 1003-04.

On July 31, 2023, the ALJ reheard plaintiff's claims. See id. at 941-68. At the hearing, plaintiff limited his claims to the period from October 11, 2016 to December 31, 2021 because he "began substantial gainful activity in . . . 2022." Id. at 947. On November 3, 2023, the ALJ issued a decision finding that plaintiff was not disabled during this period. See id. at 915-23. Plaintiff asked the Appeals Council to review this decision, see id. at 1137-44, but it denied the request, see id. at 905-11. Plaintiff then filed the instant action. See Compl.

B. The Rehearing

Plaintiff appeared by phone at the July 31, 2023 (re)hearing before the ALJ, along with his attorney. R. at 943. A vocational expert, Yaakov Taitz, was also present. Id.

Plaintiff testified that he suffered from sickle cell disease, see id. at 949, and reported experiencing sickle cell "crises" "[e]very day," id. at 950. Plaintiff stated, "I have consistent pain

all over." Id. at 949.  He indicated that his condition affected his use of his legs, explaining,

"Sometimes I need to stand or be hunched over, curled up." Id.  He added, "Because of the pain,

I can't even walk." Id.  He also indicated that his condition impaired his use of his hands, see id.,

his ability to focus, see id., his vision, see id. at 950-51, and his sleep, see id. at 951.

Plaintiff testified that he had difficulty bending over to pick up objects, see id. at 955-56,

standing up or sitting for more than half an hour, id. at 956-57, ascending or descending stairs,

id. at 956, and walking more than "three blocks," id. at 957.  He added that he "tried a cane, but

it didn't do anything for me." Id.  He also testified that he could periodically lift and carry

objects weighing up to 25 pounds, id., but that he had difficulty lifting and carrying smaller

objects at times, id. at 958.  Plaintiff stated that his symptoms would require him to take frequent

breaks from work.  See id. at 953 ("If I had pain, I would take a break and hide.").  Occasionally,

his condition would require hospitalization, leaving him unable to report to work; as a result of

these absences, he was fired from multiple positions, see id. at 959-60.

Plaintiff's testimony largely reprised his testimony at his April 19, 2019 hearing.  See Br.

at 9-10 (summarizing plaintiff's testimony at that hearing).

In response to questioning from the ALJ, Taitz gave his opinion that an individual capable

of performing "light work" (as that phrase is defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b)) with certain additional exertional limitations would not be able to perform plaintiff's

past work as a package handler.  See R. at 961.[2]   However, such an individual would be able to

perform other jobs, such as "storage rental clerk," "price marker," or "routing clerk." Id. at 962.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R.
§§ 404.1567(b), 416.967(b).

Taitz opined that this individual would be able to perform these jobs even if he or she could only sit or stand for 30 minutes at a stretch. See id. at 962-63. But if he or she needed to be "off-task more than 20 percent of the time," then he or she would be eligible for "[n]o jobs." Id. at 964.

In response to questioning from plaintiff's attorney, Taitz added that an individual who missed more than one workday a month could not maintain competitive employment, nor could an individual who missed five to seven workdays in a row three or four times a year. See id. at 965, 967. Further, an individual who needed "additional breaks that are unscheduled every hour for up to 30 minutes at a time" would not be able to hold a job. Id. at 966.

C. The Medical Evidence

Plaintiff has provided a detailed summary of the relevant medical evidence, see Br. at 2-9. We directed the parties to specify any objections they had to the opposing party's summary. See Scheduling Order, dated Dec. 17, 2025 (Docket # 10) ¶ 2. The Commissioner did not specify any objections and instead "adopt[ed]" plaintiff's "recitation of the relevant facts and underlying proceedings . . . except any inferences, arguments or conclusions asserted therein." Opp. at 5. The Commissioner only wished to emphasize (1) plaintiff's testimony that he did not use a cane and (2) Taitz' testimony that someone capable of performing "light work" with certain additional exertional limitations could work as a "storage rental clerk," "price marker," or "routing clerk." Opp. at 6.

We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D. The ALJ's Decision

The ALJ held that plaintiff had not engaged in substantial gainful activity between October 11, 2016 and December 31, 2021. R. at 917. She also held that plaintiff suffers from

4

the following severe impairments: sickle cell disease, necrosis,[3] and pulmonary hypertension (high blood pressure).  Id. at 918.  She found that these impairments neither matched nor medically equaled the severe impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 918-19.  Accordingly, she proceeded to assess plaintiff's residual functional capacity ("RFC").

The ALJ assessed plaintiff as possessing the RFC "to perform light work . . . except that the claimant can occasionally balance, on uneven terrain, but is not limited in ability to maintain balance on even terrain, and can occasionally stoop, crouch, kneel, craw and climb ramps and stairs; but never climb ladders, ropes, or scaffolds."  Id. at 919.  She continued, "[plaintiff] remains able to perform the mental demands of work that requires him to understand, remember, and carry out instructions consistent with occupations that can be learned in up to and including three months."  Id.  She found that this RFC left plaintiff "unable to perform past relevant work" as a package handler.  Id. at 921-22.  However, considering plaintiff's RFC together with his age, education, and work experience, she held that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," singling out such "representative occupations" as "storage facility rental clerk," "price marker," and "routing clerk."  Id. at 922. Reasoning that plaintiff could have made "a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ determined that he was not disabled under the Social Security Act.  Id. at 923.

In assessing plaintiff's RFC, the ALJ considered objective (medical) evidence and subjective evidence (namely, his testimony).  See id. at 919-21.  She began with his testimony,

---

[3] "Pathologic death of one or more cells, or of a portion of tissue or organ, resulting from irreversible damage . . . ."  Stedman's Medical Dictionary 1186 (27th ed. 2000).

finding that his impairments "could reasonably be expected to cause [his] alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 920.

The ALJ contrasted plaintiff's testimony with treatment records from December 2016, August 2017, October 2017, December 2017, January 2019, and December 2021. See id. She also considered the expert opinions of Dr. Allen Meisel, an SSA-appointed consultative examiner who evaluated plaintiff in August 2017; Dr. Iuliana Shapira, his former treating physician; and Dr. Perry Cook, his current treating physician. See id. at 921.

Meisel opined that plaintiff "had no physical limitations," which the ALJ noted was "not consistent with treatment notes" or plaintiff's "complaints of severe pains." Id. Meisel also opined that plaintiff's "use of a cane was not medically necessary," an opinion the ALJ assigned "great weight." Id.

In contrast, the ALJ assigned "little weight" to the opinions of Shapria and Cook. See id. Shapira opined:

> in October 2017 that the claimant could sit or stand for less than one hour total in a day, could never lift any weight, could frequently perform manipulative activities with either upper extremity, would have his attention and concentration interrupted by symptoms frequently, would need unscheduled breaks every hour, and would be absent from work more than three times per month. In December 2018, Dr. Shapira additionally opined that the claimant could never perform manipulative activities.

Id. (citations omitted). For his part, Cook opined:

> in April 2022 that the claimant had a severe blood disorder, would have to take unscheduled breaks during the day, could sit up to 5 hours in a day, could stand and walk 3 hours in a day, had marked limitations in activities of daily living and in maintaining concentration and pace, should avoid crowded environments, and would have good or bad days. Dr. Cook opined in July 2023 that the claimant's blood disorder was moderate in severity, the claimant would be able to sit 8 hours

in a day, stand and walk 1-2 hours in a day, and had marked limitations in activities of daily living and in maintaining concentration and pace.

Id. (citations omitted).  As described further below, the ALJ discounted these opinions, labelling them inconsistent with "treatment notes" that "generally show no positive findings."  Id.

II.    LEGAL STANDARDS

A.  Scope of Judicial Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation and internal quotation marks omitted); see 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order) (quoting Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008)).

"If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  Ayala v. Kijakazi, 620 F. Supp. 3d 6, 14 (S.D.N.Y. 2022) (quoting Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447 (2d Cir. 2012)).  Substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).  "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019)

7

(citation and internal quotation marks omitted).  The "threshold for such evidentiary sufficiency is not high."  Id.

Therefore, it is not our function "to determine de novo whether [plaintiff] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted) (alteration in original); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citation and internal quotation marks omitted).  Put differently, if there is "substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

"The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."  Brault, 683 F.3d at 448 (citation and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision."  Johnson, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

B.  Standards Governing Evaluation of Disability Claims

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).  A person will be found to be disabled only if her "impairments are of such

8

severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (citations omitted); accord Aponte v. Kijakazi, 692 F. Supp. 3d 257, 264 (S.D.N.Y. 2023).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating SSDI and SSI claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Burgess, 537 F.3d at 120. First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if she is not, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) — an impairment that "significantly limits" her "physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if her severe impairment matches or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant must be found to be disabled. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Otherwise, at the fourth step, the Commissioner must determine if she is able to perform past relevant work, id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and fifth, if she is not, then the Commissioner must decide if her RFC, along with her age, education, and work experience, permits the claimant to do other work, id.

9

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, she will be deemed disabled.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps save the final one — that is, on all steps aside from proving that there is other work she can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

III.    DISCUSSION

Plaintiff argues that the ALJ erred in not assigning controlling weight to the opinions of his treating physicians, or else by failing to consider the factors laid out in Burgess.  See Br. at 11-17.  He also argues that the ALJ erred in her evaluation of his testimony.  See id. at 17-19. We address these arguments in turn.

A.    Whether the ALJ Assigned Proper Weight to the Opinions of Plaintiff's Doctors

Under the so-called treating physician rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating sources" — as defined by regulation — when determining if the claimant is disabled, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), including when assessing the claimant's RFC, see Schillo v. Kijakazi, 31 F.4th 64, 76-78 (2d Cir. 2022).  Although the SSA eliminated the treating physician rule as of March 27, 2017, plaintiff's applications were filed before that date, see R. at 96-115, and thus the rule applies to his claim. See, e.g., Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

The Second Circuit has summarized the deference owed to a "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.  First, the ALJ must decide whether the opinion is entitled to controlling weight.  "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess, 537 F.3d at 128 (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).  Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give

it.  In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight at step two is a procedural error.  Selian, 708 F.3d at 419-20.  If "the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment]," we are unable to conclude that the error was harmless and consequently remand for the ALJ to "comprehensively set forth [its] reasons."  See Halloran, 362 F.3d at 33.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019).

The Commissioner is not required to give deference to a treating physician's opinion where it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  Halloran, 362 F.3d at 32.  In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  Finally, a "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order), and even where the ALJ fails to explicitly apply these "Burgess factors," a court may, after undertaking a "searching review of the record," elect to affirm the decision if "the substance of the treating physician rule was not traversed," Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

11

Here, we agree with plaintiff that the ALJ erred in addressing his treating sources' opinions.  As stated in Burgess, "the opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record."  537 F.3d at 128 (alteration, citation, and internal quotation marks omitted).  The ALJ recognized that the opinions of Shapira and Cook were "supported" by their "treatment of the claimant," citing to records generated by these physicians.  R. at 921.  But she held that the opinions were inconsistent with "treatment notes" that "generally show no positive findings" and a result assigned them "little weight."  Id.  While deference to the opinions of treating physicians is not required when their views are "not consistent with other substantial evidence in the record," Halloran, 362 F.2d at 32, the "treatment notes" the ALJ cited to do not meaningfully contradict the opinions of Shapira and Cook.

The ALJ cited to excerpts from three records.  See R. at 921 (citing "Exhibits 2F at 2, 3; Exhibit 1F at 13, Exhibit 3F at 40").

First, she cited to excerpts from Meisel's evaluation of plaintiff.  See id. at 405-06.  But she separately noted that Meisel's evaluation was itself "not consistent with treatment notes" or plaintiff's "complaints of severe pains."  Id. at 921.  Meisel's evaluation cannot serve to discount the opinions of Shapira and Cook because Meisel's opinion is itself, as the ALJ notes, inconsistent with the record.

Second, she cited to a clinical report generated on September 11, 2012 — over four years before the claimed onset of his disability.  See id. at 390.  The report observed that plaintiff "was able to bear weight."  Id.  Obviously, the relevance of this observation to any assessment of plaintiff's condition between October 11, 2016 and December 31, 2021 is limited.  See Balz v.

12

Kijakazi, 2022 WL 1446504, at \*17 (S.D.N.Y. Jan. 25, 2022) (report evidencing claimant's "excellent exercise capacity" before disability onset date did not support ALJ's finding that claimant "could work on a sustained basis after his disability onset date"), adopted by, 2022 WL 1058497 (S.D.N.Y. Mar. 30, 2022).

Third, she cited to a 2017 chest x-ray which, according to a medical resident, identified no abnormalities.  See R. at 447.  As an initial matter, the ALJ omitted to consider an addendum made by an attending radiologist who observed spinal deformities "likely related to patient's sickle cell disease."  Id. at 448.  In any event, the mere fact of a single normal chest x-ray is hardly sufficient to discount the opinion of a treating source as to a patient's limitations.

These citations thus do not demonstrate that the opinions of Shapira and Cook are inconsistent with "treatment notes" that "generally show no positive findings."  R. at 921.  Because there was no discussion of the Burgess factors or explanation generally of what the treatment notes showed with respect to plaintiff's complaints of pain or other limitations, the ALJ erred.

We recognize that the Commissioner has pointed in briefing papers to other portions of plaintiff's treatment record that purportedly contradict Shapira and Cook's findings.  See Opp. at 9.  Such citations, however, invite us to impermissibly "affirm an administrative action on grounds different from those considered by the agency."  Burgess, 537 F.3d at 131 (citation and internal quotation marks omitted).  We are thus loath to consider them.

Nonetheless, we note that the citations refer to four sets of treatment notes that do not clearly contradict plaintiff's treating sources.  See R. at 543-44 (September 2016 hospital visit); id. at 470-71 (August 2018 hospital visit); id. at 629 (December 2018 hospital visit); id. at 731 (January 2019 EMT encounter).  The 2016 treatment notes show that plaintiff was not

experiencing fatigue, that he had normal range of motion in his extremities, and that he did not present neurological symptoms.  See id. at 543-44.  The two sets of 2018 treatment notes likewise indicate that plaintiff presented normally.  See id. at 470-71, 629.  Similarly, the 2019 treatment notes disclose that plaintiff had a steady gait and full command of his extremities.  See id. at 731.

While these treatment notes to some degree undermine the opinions of plaintiff's treating physicians, they also reflect that plaintiff complained of severe, sickle cell disease-related pain each time he was seen — pain he rated at seven or eight out of 10.  See id. at 543 (7/10), 470 (7/10), 624 (8/10), 731 (7/10).  In this regard, the treatment notes are not inconsistent with the opinions of plaintiff's treating physicians, which rest on the pain plaintiff's condition causes him.  See id. at 530 (Shapira's opinion that plaintiff experiences "chronic diffuse" pain); id. at 1294 (Cook's opinion that plaintiff lives with "chronic pain").  Other parts of the record not cited by the Commissioner indicate problems resulting from pain and the need for treatment of pain.  See, e.g., id. at 596-97, 645, 738-39.

Given this record, it is far from clear that "the substance of the treating physician rule was not traversed" when the ALJ discounted Shapira and Cook's opinions.  Estrella, 925 F.3d at 96 96 (quoting Halloran, 362 F.3d at 32).  As a result, it is not appropriate for this Court to determine whether the record might support the ALJ's evaluation of the treating physician opinions.  Instead, the ALJ must in the first instance consider the effect of the treatment notes.

In conclusion, the ALJ not only "fail[ed] to 'explicitly' apply the Burgess factors," Estrella, 925 F.3d at 96 (citation and internal quotation marks omitted), she ultimately failed to give "good reasons" for the weight she assigned Shapira and Cook's opinions by not grappling with record evidence supporting their opinions, id. (citation and internal quotation marks

14

omitted).  In these circumstances, "w]e are unable to conclude that the error was harmless and

consequently remand for the ALJ to 'comprehensively set forth [her] reasons.'" Id. (quoting

Halloran, 362 F.3d at 33).

     B.  Whether the ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff takes issue with the ALJ's finding that his testimony about his symptoms was

"not entirely consistent with the medical evidence and other evidence in the record," R. at 920,

but his argument on this score is hard to follow, see Br. at 18-19.  He seems to be arguing that the

ALJ impermissibly "reject[ed]" his testimony "solely because the available objective medical

evidence d[id] not substantiate" it.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  But the ALJ did

not reject plaintiff's testimony; she found that it was "not entirely consistent with the medical

evidence and other evidence in the record."  R. at 920.  In doing so, she did precisely what the

relevant regulations required of her.  The relevant regulations state:

> We will consider your statements about the intensity, persistence, and limiting
> effects of your symptoms, and we will evaluate your statements in relation to the
> objective medical evidence and other evidence, in reaching a conclusion as to
> whether you are disabled.  We will consider whether there are any inconsistencies
> in the evidence and the extent to which there are any conflicts between your
> statements and the rest of the evidence, including your history, the signs and
> laboratory findings, and statements by your medical sources or other persons about
> how your symptoms affect you.

20 C.F.R. §§ 404.1529(c)(4) (emphasis added), 416.929(c)(4) (emphasis added).  Accordingly,

we cannot say that she erred.

Plaintiff also asserts that the ALJ required him to "have more aggressive treatment with

frequent hospitalizations to prove the presence of chronic pain."  Br. at 19.  The ALJ examined

plaintiff's history of hospitalizations, among other objective medical evidence, to find that his

testimony about his symptoms was "not entirely consistent with the medical evidence and other

evidence in the record," R. at 920.  Plaintiff suggests, see Br. at 19, that in doing so, she

15

inappropriately imposed her own "notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment." Shaw v. Chater, 221 F.3d 126, 134-35 (2d Cir. 2000). Plaintiff's citation is off the mark. Shaw holds that an ALJ may not "substitute [her] own expertise or view of the medical proof for the treating physician's opinion" by imposing her own "notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment." Id.; accord Burgess, 537 F.3d at 129 (cited at Br. at 19). But the ALJ did not transgress this holding: that is, she did not make a judgment that plaintiff's history of hospitalizations required discounting the opinions of his treating physicians. Rather, she made a judgment that this history required discounting plaintiff's own testimony. See 20 C.F.R. §§ 404.1529(c)(4) 416.929(c)(4).

Finally, plaintiff argues that the ALJ was wrong to compare his testimony with treatment notes from December 2021 on the theory that he only claimed to be disabled through December 31, 2021. See Br. at 19. Because these treatments notes come within the period of plaintiff's claimed disability, we cannot fault the ALJ for considering them.

C.  Requested Relief

Plaintiff asks us to reverse the Commissioner's decision "solely for a calculation and award of benefits." Br. at 20. This relief "is appropriate when there is persuasive proof of disability and further development of the record would not serve any purpose." Stadler v. Barnhart, 464 F. Supp. 2d 183, 187 (W.D.N.Y. 2006) (citations and internal quotation marks omitted). By contrast, remand is warranted where, as here, "the ALJ . . . failed to follow SSA regulations requiring a statement of valid reasons for not crediting the opinion of plaintiff's treating physician." Schaal, 134 F.3d at 503 (remanding case "to allow the ALJ to reweigh the evidence").

16

CONCLUSION

For the reasons given above, this matter is remanded to the Commissioner pursuant to 42

U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

Dated: June 12, 2026
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

17